IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TEDDY R. TETZLAFF,                    )
                                      )
                    Plaintiff         )          Civil No. 08-6301-KI
                                      )
         v.                           )          OPINION AND ORDER
                                      )
MICHAEL J. ASTRUE,                    )
                                      )
                                      )
                    Defendant.        )

KATHRYN TESSINARI
DREW L. JOHNSON
1700 Valley River Road
Eugene, OR 97401

        Attorney for Plaintiff

KENT S. ROBINSON
Acting United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600

Portland, OR 97204-2904

CAROL A. HOCH
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

       Attorneys for Defendant

KING, District Judge:

       Plaintiff Teddy Renee Tetzlaff ("Tetzlaff") seeks judicial review of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's final decision is affirmed.

## BACKGROUND

       Born in 1977 (Tr. 60),[1] Tetzlaff has a general equivalency degree and training as a certified nurse assistant. Tr. 76. Tezlaff reports past work as a care provider and certified nurse assistant as well as work as an office clerk, production worker, sales associate, waitress, and printing assistant. Tr. 79. Tetzlaff applied for DIB and SSI on May 26, 2004 (Tr. 60-62, 330-32), alleging disability since April 6, 2004. *Id.* The Commissioner denied these applications initially and upon reconsideration. Tr. 26-37; 332-42.

       An Administrative Law Judge ("ALJ") held a hearing on January 18, 2007. Tr. 353-85. On April 13, 2007, the ALJ issued an unfavorable decision. Tr. 16-25. The Appeals Council accepted additional evidence into the record (Tr. 9), but denied review, making the ALJ's decision the final

---

       [1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on March 3, 2009 (Docket # 10).

2 - OPINION AND ORDER

decision of the Commissioner. Tr. 6-8. Tetzlaff presently appeals.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520; 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii); 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e), Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant can perform

her past relevant work, she is not disabled.  If the ALJ finds that the claimant's RFC precludes performance of her past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f); 416.920(a)(4)(v); 416.920(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  If the claimant cannot perform such work, she is disabled.  *Id.*

The initial burden of establishing disability rests upon the claimant.  *Tackett*, 180 F.3d at 1098.  If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience."  *Id.* at 1100.  If the Commissioner meets this burden the claimant is not disabled.  20 C.F.R. §§ 404.1520(g); 404.1566; 416.920(g); 416.966.

## THE ALJ'S FINDINGS

The ALJ found Tetzlaff's anxiety related disorders, including her panic disorder with agorophobia and social phobia, and major depressive disorder "severe" at step two in the sequential proceedings. Tr. 19.  Here the ALJ found Tezlaff's deficiencies in concentration, persistence, and pace "mild." *Id.*

The ALJ found that Tezlaff's impairments did not meet or equal a listing at step three.  Tr. 19-20.  The ALJ subsequently found Tetzlaff's testimony regarding her symptoms "not entirely credible. (Tr. 22), and found that she retains the RFC to perform "simple, routine tasks and instructions, with only occasional co-worker contact, and no public contact." Tr. 20.  At step four,

the ALJ found that Teztlaff could perform her past relevant work as an industrial cleaner (Tr. 23),

and also concluded that this RFC allowed Tetzlaff to perform work existing in the national economy

at step five.  Tr. 23-24.  The ALJ therefore found Tetzlaff not disabled.  Tr. 25.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied

proper legal standards and the findings are supported by substantial evidence in the record.  42

U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193

(9th Cir. 2004).  "Substantial evidence" means "more than a mere scintilla, but less than a

preponderance."  *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009)

(quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  It is "such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion."  *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715,

720 (9th Cir. 1998)).  The reviewing court may not substitute its judgment for that of the

Commissioner.  *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir.

2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  Variable interpretations

of the evidence are insignificant if the Commissioner's interpretation is a rational reading.  *Id.*, *see*

*also Batson*, 359 F.3d at 1193.

## ANALYSIS

Tetzlaff challenges the ALJ's evaluation of her testimony, and the opinions of a treating

physician and a nurse practitioner.  Tetzlaff also asks this court should consider additional evidence

accepted into the record by the Appeals Council.

**I.    Credibility**

    **A.    Standards: Credibility**

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* Once a claimant establishes an impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

    **B.    Analysis: Credibility**

Tetzlaff challenges the ALJ's credibility findings which cite her non-compliance with treatment and failure to follow treatment and her methamphetamine abuse.

///

### a.    Non-Compliance With Treatment

The ALJ discussed Tetzlaff's non-compliance with treatment at length. Tr. 21-22. The ALJ noted that Tetzlaff was terminated from mental health counseling because she failed to attend appointments, and Tetzlaff's report to DDS that she no longer goes to therapy. Tr. 21 (citing Ex. 10E, 11E).

Tetzlaff asserts that, because she testified at her hearing that she attends therapy, the ALJ's findings are unsubstantiated. Pl.'s Opening Br. 18 (citing Tr. 378).

The record before this court shows that Tetzlaff first received mental health counseling from Linn County Mental Health ("LCMH") between June 18, 2002, and July 18, 2002. Tr. 255-62. The record shows no subsequent treatment until April 14, 2004. Tr. 242-45; 254. Tetzlaff attended one additional session on April 28, 2004. Tr. 247. LCMH discharged Tetzlaff on September 17, 2004 because she was "non-compliant with LCMH rules and regulations." Tr. 250. The discharge notice "reason for discharge" subsequently stated that Tetzlaff attended only two of five scheduled appointments. Tr. 252. The file also contains a LCMH "treatment plan" dated March 9, 2006, but makes no indication that treatment commenced. Tr. 327-28.

Tetzlaff did not submit any additional counseling records showing that she resumed treatment. The ALJ's finding that Tetzlaff failed to comply with prescribed mental health treatment is therefore based upon the record.

A claimant may be found not credible for failing to follow prescribed treatment, absent a compelling reason for not following that treatment. *Smolen*, 80 F.3d at 1284. Examples of such reasons include extraordinary side effects of treatment, including loss of vision or risks associated

with organ transplant.  20 C.F.R. §§ 404.1530; 416.930.  Additionally, a claimant may not be penalized for failing to seek treatment when she cannot afford treatment.  *Gamble v. Chater*, 68 F.3d 319, 322 (9th Cir. 1995).  No authority suggests a claimant is no longer required to comply with treatment simply because she does not want to leave her house.  The ALJ's finding regarding Tetzlaff's failure to attend treatment is based upon the record and is therefore affirmed.

        **b.**    **Methamphetamine Abuse**

The ALJ credibility analysis also discussed Tetzlaff's methamphetamine abuse.  Tr. 21.  The ALJ first noted Tetzlaff's testimony that she used methamphetamine daily for one year, and that her panic attacks were worse during this period.  *Id.*  The ALJ also cited Tetzlaff's testimony that she completed a rehabilitation program at Serenity Lane and has remained sober since.  *Id.*  The ALJ subsequently again noted Tetzlaff's testimony that her anxiety was worse with methamphetamine use, but that she also "self-medicated" with methamphetamines.  *Id.*  Finally, the ALJ found that Tetzlaff offered contradictory testimony regarding her drug use because she testified that she used methamphetamines for a twelve-month period, but medical records show that she also reported using methamphetamines for an eighteen-month period.  Tr. 21 (citing Ex. 14F).

Tetzlaff now asserts that she is presently clean and sober, and that the ALJ did not explain why her methamphetamine use would justify rejection of her testimony regarding her panic attacks and headaches.  Pl.'s Opening Br. 18-19.

The ALJ may cite a claimant's contradictory testimony regrading drug use in finding a claimant generally not credible.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  The ALJ's finding is based upon her contradictory testimony.  The record supports the ALJ's finding that

Tetzlaff reported using methamphetamines for an eighteen-month period.  Tr. 323.  The ALJ's finding that Tetzlaff offered contradictory testimony regarding her drug use is based upon the record and the appropriate legal standard.  This finding is therefore affirmed.

### C.    Conclusion: Credibility

In summary, the ALJ appropriately cited Tezlaff's failure to comply with treatment and her methamphetamine use in his credibility analysis.  Tetlaff makes no other credibility challenges.  The ALJ's credibility findings are therefore affirmed.

## II.    Medical Source Statements

Tetzlaff challenges the ALJ's assessment of treating physician Dr. Ward, examining physician Dr. Wagener, and nurse practitioner Nathan Dingeldein.

### A.    Standards: Medical Source Statements

Generally, the ALJ must accord greater weight to the opinion of a treating physician than that of an examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician.  *Id.*, at 830.  The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  Disability opinions are furthermore reserved for the Commissioner.  20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1).  Finally, nurse practitioners are evaluated as "other" medical sources, which may show the severity of an impairment.  20 C.F.R. §§ 404.1514(d)(1); 416.914(d)(1).

///

9 - OPINION AND ORDER

B.    **Treating Physician Dr. Ward**

a.    **Dr. Ward's Opinion**

Dr. Ward treated Tetzlaff between October 17, 2003, and December 14, 2004. Tr. 185-236, 300-02. During this period Dr. Ward assessed generalized anxiety disorder, gastro-esophageal reflux disease, abdominal pain, costochondritis, asthma, right leg pain, and right arm pain. *Id.* Dr. Ward resumed treating Tetzlaff on December 15, 2005, and continued to treat her until July 13, 2006. Tr. 274-306. During this second period Dr. Ward assessed lower back pain, migraine headaches, asthma, and TMJ pain. *Id.* Dr. Ward noted Tetzlaff's anxiety on February 21, 2006. Tr. 298-99.

On April 6, 2004, Dr. Ward completed a form entitled "Jobs for Oregon's Future Medical/Mental Health Release" in conjunction with Tetzlaff's enrollment at Linn-Benton Community College. Tr. 271. Dr. Ward stated that Tetzlaff's diagnoses were anxiety disorder and agorophobia, that her prognosis was "fair," and indicated that she could not participate in various job search classes. *Id.*

Dr. Ward completed a second "Jobs for Oregon's Future" medical release form on May 11, 2006. Tr. 268-69. Here Dr. Ward cited only an anxiety disorder diagnosis, again with a "fair" prognosis, and indicated that Tetzlaff could participate in a "Workforce Now" class which required six hours of classroom activity, five days per week. *Id.* Dr. Ward also stated that Tetzlaff "may become uncomfortable or anxious in [a] classroom setting, [and] may need to be excuse[d] intermittently." *Id.* Finally, Dr. Ward stated that Tetzlaff should not engage in public speaking, and recommended that Tetzlaff have help taking notes to make up for times she leaves class due to anxiety. *Id.*

The ALJ noted Dr. Ward's progress notes, and concluded they showed that Tetzlaff's "symptoms are relatively unchanged, other than various instances of situational stress such as relationship problems, preparing to provide witness testimony in a homicide trial, and being arrested." Tr. 22. The ALJ also cited Dr. Ward's "Jobs for Oregon" work releases and noted Dr. Ward's statement that Tetzlaff may need to intermittently leave the classroom. *Id.*

### b. Analysis

Tetzlaff cites Dr. Ward's "Jobs for Oregon" work release forms, and claims the ALJ "acknowledged Dr. Ward's opinion, but did not give any reason for failing to credit it." Pl.'s Opening Br. 17. Tetzlaff subsequently asserts that these forms establish that Tetzlaff may need to intermittently leave the workplace. *Id.*

The ALJ accepted Dr. Ward's clinical opinions regarding Tetzlaff's diagnoses. Tr. 22. The ALJ's RFC also precludes public contact (Tr. 20), indicating that he accepted Dr. Ward's statement in the May 11, 2006, work release that Tetzlaff should not engage in public speaking.

Dr. Ward did not indicate how frequently he believed Tetzlaff should be excused from class. Tr. 268. Therefore, there is no opinion to credit regarding Dr. Ward's opinion and Tetzlaff's absences. Furthermore, Tetzlaff's alleged inability to sit through class is based upon her own reports. Because the ALJ properly found Tetzlaff not credible, as discussed above, he was free to reject her testimony regarding her need to intermittently leave class or the workplace due to anxiety. For these reasons, the ALJ's findings regarding Dr. Ward's May 2006 "Jobs for Oregon" work release form are affirmed.

///

11 - OPINION AND ORDER

C.    **Examining Psychologist Dr. Wagener**

    a.    **Dr. Wagener's Opinion**

Psychologist Dr. Wagener evaluated Tetzlaff for DDS[2] on September 26, 2004. Tr. 151-55. Dr. Wagener based his evaluation upon Tetzlaff's reported history and a clinical examination. Tr. 151-55. Here Dr. Wagener noted that Tetzlaff had good grooming and hygiene, was oriented to time, place, and person, and appeared to have intact short and long term memory. Tr. 154. Dr. Wagener found that Tezlaff's "ability to concentrate, as measured by serial numbers was poor." *Id.* In conclusion, Dr. Wagener assessed panic disorder with agoraphobia, social phobia, and poly-substance abuse in remission. Tr. 155.

The ALJ cited Dr. Wagener's panic disorder diagnoses. Tr. 22. The ALJ also noted Dr. Wagenger's report that Tetzlaff exhibited no evidence of suicidal ideation or violent behavior, and that Tetzlaff appeared anxious at her examination, but did not have a panic attack. *Id.*

    b.    **Analysis**

Tetzlaff asserts that the ALJ's finding that she had "mild" limitations in concentration, persistence, and pace (Tr. 19) contradicted Dr. Wagener's findings. Pl.'s Opening Br. 17.

As noted, Dr. Wagener found that Tetzlaff had "poor" ability to concentrate in serial numbers testing. Tr. 154. However, Dr. Wagener assigned no workplace limitations and did not cite impaired concentration in his diagnostic summary. Tr. 155. The ALJ found that Tetzlaff could perform "simple, routine tasks and instructions." Tr. 20. Tetzlaff makes no showing that poor concentration

---

    [2] DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. §§ 404.1502; 416.903.

in serial numbers testing precludes this RFC.  Any discrepancy between Dr. Wagener's serial number

testing and the ALJ's findings is therefore inconsequential.  The ALJ's findings regarding Dr.

Wagener are affirmed.

### D.    Nurse Practitioner Dingeldein

Tetzlaff asserts that the ALJ did not appropriately review Nurse Practitioner Dingeldein's

opinion, specifically his global assessment of functioning ("GAF")[3] analysis.  Pl.'s Opening Br. 19.

### a.    Nurse Dingeldein's Opinion

Nurse Dingeldein treated Tetzlaff on October 31, 2006 (Tr. 323-26), and May 5, 2007.  Tr.

317-18.  On both occasions Nurse Dingeldein assessed panic disorder with agorophobia, recurrent

major depressive disorder "versus" an adjustment disorder, amphetamine dependence in remission,

and obsessive-compulsive disorder.  Tr. 317, 325.  Nurse Dingeldein also assessed a GAF of thirty

five to forty on October 31, 2006.  Tr. 325.

### b.    Analysis

The ALJ cited Nurse Dingeldein's opinion, and found his GAF analysis unsupported by his

treatment notes.  Tr. 22.  Here the ALJ found Nurse Dingeldein's October 2006 GAF analysis

inconsistent with Nurse Dingeldein's findings.  The ALJ also cited Nurse Dingeldein's January 2007

note that Tetzlaff reported her anxiety symptoms at "five to six" and her depression symptoms at

"four to five" on a scale of one to ten.  *Id.*

The record shows that Nurse Dingeldein made no GAF assessment on January 5, 2007 (Tr.

---

[3]The GAF scale is used to report a clinician's judgment of the patient's overall level of
functioning on a scale of 1 to 100.  American Psychiatric Association, *Diagnostic and
Statistical Manual*, 4th Ed. Text Revision (2002), 34.

317-18). Nurse Dingeldein's October 31, 2006, treatment note assessed a GAF of thirty five to forty.

Tr. 325.  Nurse Dingeldein based this assessment on the following mental status exam:

> [A]lert and oriented in all four spheres, pleasant, a little guarded at times but mostly engaging in the session.  Posture and psychomotor activity are fairly normal.  She has got some mild psychomotor retardation.  She is casually but well dressed with good hygiene.  Speech is spontaneous.  She has good eye contact.  Affect is constricted.  She is tearful and depressed at times, anxious at other times.  Thinking is clear, organized and goal directed.  There is some mild irrationality but by and alrge it is fairly reality based.  There is no evidence of psychosis or other thought disorder.  No mania or hypomania, no suicidal or homical ideations.  She does endorse significant obsessing and some compulsivity.  I would rate her intelligence as average to above average.  Attention is fairly good.  Memory seems to be intact.  Insight and judgment both seem to be fairly intact too.

Tr. 325.

The ALJ did not provide a citation, but the *Diagnostic and Statistical Manual* ("DSM") explains that a GAF of thirty one to forty corresponds to "Some impairment in reality testing or communication (e.g. speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment thinking, or mood (e.g. depressed man avoids friends, neglects family, and is unable to work . . . )." American Psychiatric Association, *Diagnostic and Statistical Manual*, 4th Ed. Text Revision (2002), 34.  Nurse Dingeldein's notes do not reflect the degree of impairment described in the *DSM*.  Though the ALJ may not substitute his own judgment for that of a physician, *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)(hearing examiner, not qualified as a medical expert, should not go beyond the record to make his own assessment of the claimant's condition), the ALJ's finding that Nurse Dingeldein's GAF analysis is unsupported by his clinical record is a reasonable inference.  The ALJ may reject a

14 - OPINION AND ORDER

physician opinion inadequately supported by clinical notes or findings, *Bayliss*, 427 F.3d at 1216, and this court must affirm the ALJ's findings when they are based upon "inferences reasonably drawn." *Batson*, 359 F.3d 1190, 1193 (9th Cir. 2004). For these reasons, the ALJ properly rejected Nurse Dingeldein's GAF analysis.

Tetzlaff makes no other challenges regarding the ALJ's analysis of Nurse Dingeldein's treatment notes, and the ALJ's findings are therefore affirmed.

### E.     Conclusion: Medical Evidence

In summary, the ALJ appropriately addressed the medical evidence. These findings are affirmed.

## III.    New Evidence: Examining Psychologist Dr. Redner

Finally, Tetzlaff asserts that this court should consider the opinion of examining psychologist Dr. Redner and subsequently remand this matter for further proceedings so that the ALJ may address this evidence. Pl.'s Opening Br. 20. Dr. Redner examining Tetzlaff on July 27, and August 15, 2007 (Tr. 343-51), approximately three to four months after the ALJ issued his April 15, 2007, opinion. The Appeals Council accepted Dr. Redner's opinion into the record on August 6, 2008. Tr. 9.

### A.     Standard: Evidence Accepted by the Appeals Council

The reviewing court may consider additional evidence submitted to the Appeals Council when that evidence is (1) new and not merely cumulative of what is already in the record; (2) material; and (3) the claimant provides good cause for failing to submit such evidence earlier. 42 U.S.C. §§ 405(g); *Mayes v. Massinari*, 276 F.3d 453, 462-63 (9th Cir. 2001). Tetzlaff makes no argument regarding this court's obligation to address Dr. Redner's report under this standard.

**B.      Analysis**

Dr. Redner assessed diagnoses of panic disorder with agorophobia, pain disorder associated with psychological factors and a general medical condition, major depressive disorder, amphetamine dependence in remission by self report, "probable" obsessive-compulsive disorder by history,[4] and a rule-out diagnosis of opioid abuse and dependence.  Tr. 350.  Dr. Redner also assessed a GAF score of fifty.  Tr. 351.

Earlier treating and examining medical sources diagnosed panic disorder, major depressive disorder, obsessive-compulsive disorder, and amphetamine dependence in remission.  Tr. 151, 157, 187, 195, 199-304, 207-09, 211, 243, 255, 283, 289-90, 298-301, 317, 325.  Dr. Redner's report contains no new information regarding these diagnoses.

The record before the ALJ did not contain evidence of a pain disorder or opioid dependence, but Teztlaff presently claims no limitations from these diagnoses.  Pl.'s Opening Br. 1, 19.  Tetzlaff instead claims that Dr. Redner's opinion establishes mildly impaired attention and information processing, as well as severely impaired motor dexterity and hand-eye coordination.  Pl.'s Opening Br. 19-20.

As discussed above, the ALJ appropriately found that Tetzlaff has mildly impaired limitations in concentration, persistence, and pace.  Tr. 19.  Dr. Redner's opinion on this point therefore adds nothing to the record.

Regarding Dr. Redner's finding that Tetzlaff's hand-eye coordination is "severely" impaired, Dr. Redner found that Tetzlaff had a bilateral hand tremor.  Tr. 348.  Dr. Redner made no

---

[4]Regarding Tetzlaff's "probable" obsessive-compulsive disorder diagnosis, Dr. Redner noted that he did "not specifically assess for that disorder."  Tr. 350.

explanation for this finding, and did not include any associated work-related limitations in her conclusion. *Id.*, 359-51.  Tetzlaff does not presently assert any work-related limitations due to this finding.  For this reason, Tetzlaff fails to establish that it is material.

### C.       Conclusion: New Evidence

This court will not consider evidence submitted after the ALJ's decision that is neither new nor  material. *Mayes*, 276 F.3d 462-63.  Because Tetzlaff fails to show that Dr. Redner's opinion adds new and material evidence to the record, this court declines to further consider Dr. Redner's opinion.

In summary, Teztlaff fails to show that the ALJ erroneously assessed her credibility or the medical evidence in assessing her RFC.  Tetzlaff does not challenge the ALJ's subsequent step four and five findings.  The ALJ's findings are therefore affirmed.

### <u>CONCLUSION</u>

The Commissioner's decision that Tetzlaff did not suffer from disability and is not entitled to benefits under Titles II and XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence.  The Commissioner's decision is AFFIRMED and the case is dismissed.

IT IS SO ORDERED.

Dated this ____30th____ day of October, 2009.

 /s/ Garr M. King_____
Garr M. King
United States District Judge

17 - OPINION AND ORDER